You may begin. Thank you. Good afternoon. Debbie Cesario, Counsel for Appellant, Escondido Union School District. And I would like to reserve three minutes for rebuttal. You may have. Thank you. Contrary to longstanding precedent and to the actual facts of the case, the district court established or stated that it would be impossible for the school district to offer the student an appropriate program simply because an autism assessment offer was provided four months late. We believe that that decision was essentially the district court taking Timothy O. or under the guise of Timothy O. and resurrecting a strict liability or per se test when it comes to determining whether or not a procedural violation arises to a denial of fate. So let me ask, why is that? Because the district court said if the delay were brief and then the school district offered the case plan, that would be one thing, but it was the four-month delay that was the procedural violation. So I'm struggling with understanding the bright-line argument that you're making. Well, the court said some delay would be appropriate, but then inaccurately classified the delay as a quarter of a school year. And what the court did not take into account was the fact that there was a winter break in there that did delay, the timeline was told, for which the school could provide that evaluation plan. But also, when you're determining whether or not there's an educational or a denial, let's assume there's a procedural violation. For the sake of argument, we've briefed this, so I'm not conceding the point, but for sake of argument, if we're looking just at whether that procedural violation did deny the student an educational benefit, there has to be a factual inquiry looking to see what the teen knew by way of the student's educational needs as well as the student's medical needs. And that's what your amici is arguing as well, that even if there is a procedural violation, that doesn't automatically equal the denial of a fate. That is correct. So I will continue. The other issue that we have with the district court's decision is that it erred by resurrecting this strict liability test that has been consistently rejected by this court as well as the Supreme Court, and that was therefore the strict liability test that the court used instead of the two-prong test to determine whether there was a denial of fate. And that two-prong test, as I was mentioning, requires under the second prong an analysis of the facts and the circumstances unique to that particular case. And what the courts have said, when you're determining whether or not there has been a denial, you're not just looking at one point of time. You're looking at the student's IEP. You're looking at what happened at that IEP, what preceded that IEP, and what was established on the record during the due process hearing. The district court also ignored or did not hold... Ms. Zara, can I ask, did the IEP team meet during that four-month interval from December to April? Were there regular meetings still occurring? Yes, there was a regular meeting. Well, wait a second. Let me take that back. There was not another meeting. There was the filing of the due process hearing. But that was not until March. So from December to March there were no meetings in between? No, there were no other meetings. But there were attempts, I know this is in dispute, of trying to get the private assessment report. And I think it's really important to note for the court that this student, Dr. Dyson, attended an IEP meeting in December and for the first time presented either that she was going to, may have, or has diagnosed this student with autism spectrum disorder, a medical diagnosis. Counsel, didn't the ALJ make a factual finding that she said she had diagnosed autism? Didn't the ALJ cite conflicting evidence and resolve the conflicting evidence by saying she had said that she had made that determination? That is correct. She did rely on the facts and gave more weight to one witness than another witness. Well, she made a factual determination in the face of conflicting evidence. Correct, correct. So in this case, the Dr. Dyson, let's assume using the administrative law judge's decision, did inform the IEP team in December that the student DO was eligible as a student with autism. Now, what we have here, though, is an important fact, which is the purpose of that IEP team meeting was to review an educational-related mental health assessment by a school psychologist. This school psychologist had assessed the student in 2015 and twice in 2016. In 2016, when he did this educational-related mental health services evaluation, he consulted with Dr. Dyson. And at no time during that communication, he did that as part of his report. But Dr. Dyson said what she said in December, which was after that. Correct. That is correct. I have another question, counsel. Is this correct that it is undisputed, and I'll ask your friend this, but it is undisputed that there are certain autism tests that you cannot do and have them remain valid if the same autism tests were done within the previous 365 days? That is my understanding. There are some instruments. I cannot speak to which instruments. They could not be redone within a year's time. Would there have been any way for the school to know what Dr. Dyson had done without looking at the report or without Dr. Dyson saying what tests she had done? No. The only way for the IEP team to know that information was if they had the report. What about reaching out to Dr. Dyson or getting mother's permission to reach out to Dr. Dyson? As I understand it, the district court found that the school district made minimal effort to try to acquire the report, and in our review we have to review that finding for clear error. Well, the clear error, well, let me first address the fact that right before it was very close in time, that assessment done by the school psychologist was done about the same time as Dr. Dyson did her evaluation. But are you suggesting that if a staff member has a different point of view than the notice that's been given by an outside expert about the need for an autism evaluation, that the school district is no longer legally obligated to do that assessment? No, that is not what I'm saying. So then what difference does it make if staff might have differences of opinion as to whether the assessment's really going to show autism? Well, what is really the critical factor from the Timotheo case and other cases is what did the student prove by a preponderance of evidence of whether there was an educational denial, a denial of an educational benefit? And there was no evidence presented to the administrative law judge. Dr. Dyson didn't testify of the import of the autism diagnosis. This is moving to the second point as to whether there's a substantive violation. Right, and that's what I'm trying to focus on here is that there was not a substantive violation. And I take part... Uh-oh. The child was never going to get autism services because the assessment determined, and this was unchallenged by the mother, that there were no autism services that were appropriate. You cut out a little bit, but I want to make sure I understand your question. Judge Sanchez, should I ask it again? Yes, if you don't mind. You froze for a moment there, Judge Bennett. Okay, sorry. So my question was, as I understand the school's position, it's that there couldn't have been a denial of a FAPE because the child did not qualify for autism benefits, they were never provided, and the mother never challenged the school's decision that the child was not entitled to autism benefits. That's correct. But what I think is of critical importance and distinction between this case and Timothy O's case is that in Timothy O, the court went into detail in terms of you have to look at the facts and circumstances based on what happened at the IEP team and at that due process hearing. At that IEP team meeting, where they were talking about the student's educational-related mental health needs, and mind you, this is a team who has worked with this child since kindergarten. He had a mental health therapist working with him daily in the classroom and in an adjacent room. She diagnosed him as a licensed marriage and family therapist yearly. She consulted monthly with the student's private clinical psychiatrist. Then you marry that information with also the school psychologist's information from the educational-related mental health services report. That report, in part, was based on the school psychologist asking for input from Dr. Dyson. So based on that information, putting aside whether or not he was not found eligible, which I do think is relevant because it shows that he was not denied an educational benefit, but the team that sat there had a wealth of information about that student's needs educationally, medication-wise. Was Timothy O getting any services? No. He was getting some services. This child, D.O., had been getting services since kindergarten. And even in the first hearing and the remand hearing, we talked about during the due process hearing, the staff talked about, yes, some of the characteristics that came out of Dr. Dyson's report were observed and noted by school staff. But given their experience, there were behavioral specialists, mental health specialists, educational specialists, the school psychologist, talking with the student's private doctors, they said these are his needs. A student with an emotional disability can have characteristics that mirror characteristics of a student with autism. But those characteristics of students with autism, those deficits are consistent. They don't come and go. Ms. Hazard, you're into two minutes of your rebuttal time. Okay, so two minutes here? If you want to reserve time for rebuttal, you have two minutes left. I do. Thank you. Thank you. Mr. Story? Good afternoon. May it please the Court, my name is Matthew Story. I'm here on behalf of the parent and student in this matter. If I can, Your Honor, I'd like to address the merits of this claim before I move into the jurisdictional issues, if that would be okay. Under the IDA, once a school district is on notice that a student has a suspected disability, they're obligated to assess. That's it. It's the end of the inquiry. And that's the end of the inquiry, I think, in this case. In California, once a school district is put on notice, they have 15 days to provide that parent and assessment plan. They didn't do that in this case. In this case, on December 5, 2016, the parent, along with a private psychologist who had been working with the student for some time, notified the district that this child had autism. At that point, the district was under an obligation to hand parent an assessment plan and assess the student for autism. So the district had a duty to... The district had no way of independently getting Dr. Dyson's report, right? They had no entitlement to it unless the mother consented, right? That's true, Your Honor, but they could have done a number of things. They could have handed her an exchange of information or an assessment plan, just as they did after they were sued. But they asked the mother, can we get the report? And the mother said, yes, that's a fact, right? That is a fact, Your Honor. She did. And the mother got the report a couple of days after the IEP meeting, right? I think it was about a week, but that is correct, Your Honor, yes. But I think this court has been very consistent that the district doesn't get to shirk their obligations under the IDEA by blaming parent. The parent wasn't withholding the assessment. She just didn't do it, and I think it's important to understand perhaps why. You know, this is a young man who was 9 years old at the time that had been restrained multiple times in prone positions by the school district. Things weren't going well. She was under an extreme amount of stress and had shown up to an IEP meeting with a wherewithal to bring the private psychologist, and she forgot to give him the assessment. But there were a lot of other things going on. But then in April, where the request, by April she was represented by counsel, right? That is correct, Your Honor. And another request was made in a letter to counsel in April as well as a request to approve an autism assessment, right? That is correct, Your Honor. And the school district didn't get the report until July, and the autism assessment wasn't approved until August, right? That is correct, Your Honor. Is that the district's fault too? Well, no, that is not the district's fault at all. Having to sue the district to get them to do any of that is the district's fault. But when you originally sued, no part of the original suit dealt with the autism assessment. Isn't that right? The majority of that suit, if not the totality of that suit, it notified the district that the student had autism. It says that in the first page of the complaint. It also said the district had failed to assess student in all areas of suspected disability. So maybe my understanding of the facts is wrong. So after the school proposed the autism assessment, the complaint was amended at that point, right? It was amended, yes, Your Honor. What was the addition? The amendment specifically stated a failure to assess for autism. That is correct. And then the school district did make a case plan for an autism assessment. A case plan, Your Honor? Or rather, I'm forgetting the terminology, but it proposed to assess for autism. It did. Following the lawsuit, they did provide an assessment plan for autism as well as an exchange of information. And at that time, it's absolutely true, the parent didn't sign it. But at that time, we were undergoing active litigation. We had serious concerns about whether or not the district was going to be, was it actually going to do a real assessment. They had been very clear. They did not agree with us on this. So what we were trying to do at the time was to get the district to provide an outside assessor so that we could feel secure with what the district was actually doing. I'm sorry, when you say they had been very clear that they didn't agree with this, you're talking about as of April? Yes, once we filed due process and began the litigation and the discussions, it was pretty obvious, I think, from students' point, that the district didn't take this very seriously. Well, I mean, I've read Dr. D'Amico's testimony, and am I remembering who the, is that the right name, Dr. D'Amico? That is correct, yes, Your Honor. And Dr. D'Amico was talking about something, in essence, that, as your friend said, that autism doesn't come and go day to day, that there are daily symptoms that can overlap with the type of emotional disturbance that the child sadly had, but that autism spectrum, it's not like you have it one day and you don't the next. And I assume that the reason you ultimately didn't quarrel with the finding that there were no autism services to be delivered is because you didn't quarrel with that, right? No, that's actually not why, Your Honor. At that time, a substantial amount of time had passed. We had been litigating this case for years, and ultimately the district decided that they could no longer treat this student and placed him into a non-public school. That's briefly in the record, but there's no IEP to that. But that's why ultimately the parent didn't continue to quarrel. She was exhausted. This has been going on for years. I thought that the decision not to provide services was made in 2017, the same year as the lawsuit was filed. The decision not to provide, I think it was 2018, but the decision was still, and I could be wrong, Your Honor, because I don't have it in front of me, but nonetheless the decision not to fight the district for not providing autism services was just a result of not wanting to challenge the district. I'm looking at a 2017 IEP, but perhaps I somehow have this wrong, but I think that's 2017. Well, Mr. Story, let me ask this question. What was the loss of educational opportunity from the four-month delay in not assessing him for autism, the child? Well, to begin with, the case in MCV Antelope Valley said the incurring of an attorney to fight for your procedural rights is by itself a denial of an educational benefit. But when we look at the procedural aspect of the IDEA, it specifically says a loss of educational opportunity, infringing a parent's right to participate, as well as an educational harm. And so I think when you fail to assess, it encompasses all of those. The IEP team is not able to have a discussion of whether or not the student actually had autism, specifically the mom. They're not able to discuss whether or not he would qualify. They're not able to discuss what services might be available. It just kind of rolls downhill from there. You're unable to develop an IEP, or as this court has said, it is impossible unless you have that information. But we're not allowed, as your friend commented, we're not allowed to make this a per se violation. It has to be specific to the facts of each particular case. And here you have a four-month delay, at least in the school district, offering such a plan. But ultimately the IEP team found that there were no autism services needed. And so I'm still waiting to hear what specific educational opportunity was lost in this particular case. But I don't think that's necessarily required. I think that would be the problem. And it would put parents at a massive disadvantage. So you think there's no legal significance to that fact? Not at all, Your Honor. I don't. I think under the IDEA you have procedural compliance and substantive compliance. And courts look at both of those when they're determining whether or not a student has lost a faith. A substantive inquiry, yes, would incorporate that. Whether or not an IEP was appropriately developed to provide this student an educational benefit. But that is not the inquiry, I believe, before this court. So how do you accord what may be tension with prior case law that says a per se violation is not allowable under the IDEA? I look at this court's precedent in Timothy O., NBV, Hellgate, and Amanda J. that clearly says it is impossible to develop an IEP if you don't assess. And that, I think, is the end mark here. I think the purpose of this litigation is to probably breach that and allow some ability to not assess children. And I think that's exactly what would happen here. So your view is that once the 15 days passed that there was a faith violation? No. I think once the 15 days passed, you've certainly violated the procedures of the IDEA. But I think this case is a little bit more nuanced than that. It wasn't 15 days. It was 4 months. And it was only 4 months because the parent filed a due process. I understand that, but I thought I understood your argument as being the procedural violation occurred. I know your friend disagrees with this, but the procedural violation occurred when 15 days had passed. No, that's not my argument. Well, excuse me, my argument would be the procedures of the IDEA have been violated just by statute. 15 days is required under California law. Whether or not that rises to a denial of faith, if you were to assess, for example, on 16 days, I couldn't really answer here. I don't think it really would. So sometime between January and April, there was a faith violation even though there were no additional specific services that the child would ever have been entitled to during that period of time? Yes, Your Honor. I think it's really important to not have a precedent where it says that we need to show that some services or something else would be provided because a parent would be put at a huge disadvantage because now a parent has to go get a private service provider to come in and prove that what the district's offering is appropriate. Assume we agree with you. What is the remedy in that case? In a case like the one... Well, just sometime in January, the school district was required to provide an assessment and didn't, and that is a per se violation of the IDEA. What remedy would you seek from this court consistent with that violation? In this court, for a month-long denial of faith, it would either be asking the district to assess, having the district trained on when to comply with that assessment, and then in a case like the one here, it was just an independent educational evaluation. It was a minor evaluation to just make sure they were right, and that IEE that came out did diagnose that student with autism, and it's important to note that when that IEE provider, following the remand decision, showed up to an IEP, they did change the IEP. It's just not in the record because it was several years later. A lot of the things that occurred were just years later. I don't believe they're relevant because I think this case stops at the moment the parent had to sue to get the district to do their job. And again, is there any relevance to, or do you dispute, or did you dispute below the idea that there are certain autism tests that can't be repeated? Yes, it's not just autism assessments. There's a variety of assessments that the protocols themselves will not be allowed to be repeated within 365 days because the data from those assessments wouldn't be valid, or be less valid, I suppose. And so that is something that could be a problem. So Dr. Dyson's report, or the substance of the report, would be crucial to make any assessment valid? Oh, absolutely. If you were to start, I think it certainly could be argued that you could need Dr. Dyson's. But again, this court has held multiple times that you cannot... Well, for example, in J.G.B. Douglas County, the court looked at that, and the parent was actually keeping the assessment from the district. They got a private assessment, they held portions of it, and the court looked at the district and said, no, no, you don't get to just blame the parent for that. They may have held that report, but you had an independent obligation to assess. And I think it's important, Your Honor, that's not the case here. But so there's a quandary here. The school district has an obligation to assess, but they are not in the hands of a report that could either make their assessment useful or junk. And that's wholly in the mother's hands. So how do we put all this together? I don't disagree with you that the school district has an independent duty to assess, but there's a lot weighing on the mother not sharing the Dyson report, isn't there? Again, I think the important part of that is between December 5, 2016, and April, when we filed the due process, excuse me, March, when we filed the due process, the district made zero attempts to get that assessment or speak to Dr. Dyson. You heard testimony or a discussion earlier that the psychologist was ready, had already spoken with Dr. Dyson. They made no attempts to do anything. I think that's the important point here, is that when they were notified, they had to do something, and they didn't do anything. And there's no evidence in the record that they ever tried. There's no email communication. It's not that they didn't do anything. Maybe they didn't do enough, but at the December meeting, they asked for the report. So what you're saying is, after asking for the report, and I may be remembering this incorrectly, but Dr. Dyson said she was going to encourage the mother to share it at the December meeting. So it was not they did nothing. You're saying they did nothing post that until April. That's absolutely right, Your Honor. Post the December 5th meeting, they did absolutely nothing. And I would point out that both the administrative law judge and the district court agreed with this. The administrative law judge called that reasoning specious. Listening to all the facts, the ALJ realized they weren't going to assess. And the district court specifically said that what triggered the district offering an assessment plan, which again is all they had to do here, what triggered it was the due process. The parent had to sue. And so I think that's the difference between a lot of the cases that have been cited, but I think it falls right in line with Timothy. Would the assessment plan that they were going to offer have to include how they were going to do the assessment? No. What an assessment plan typically does in the state of California, it's a two-page document. On this one, which was perfectly fine, it said autism on it. So the school psychologist was going to assess students for autism. That's very common and normal when we're assessing for students. So they'd have to offer it by sending this two-page letter, but they couldn't actually do it until they knew what would be a part of it. That's absolutely right, which is why they put within their assessment plan an exchange of information to speak with Dr. Dyson. But again, we're right in the middle of litigation at that time, and that's why that assessment wasn't shared. We were trying to get something more given what had been happening to this kid for the previous year, which was not good. All right. Well, my time is only up, so if there are no further questions, I will close my remarks. Thank you, Your Honors. Thank you. I find it interesting to hear for the first time why the private report of Dr. Dyson was not shared was due to litigation. For the record, that has no import on this case, and what I really want to focus in on, quite frankly, is the language from Timothy O. It has been used, rewritten, out of context by the administrative law judge and counsel for the student. I think it's very important to note on page 1126 of the decision in Timothy O. that there may be no similar misunderstanding in the future. We will say it once again. But here is the difference, and it's a critical difference. This was a team who... This was a village who had been working with this student. Consistent providers. They were aware of his needs. They did address his needs, and they changed his IEP in December based on the results of the assessment information they had in hand. So to say that it would be impossible really just brings us back to claim a per se violation. My colleague did not provide any facts, did not establish in any way how his client was harmed, and we argue that what the IDA is about is to ensure students receive an educational benefit, and if they don't receive an educational benefit, then they are entitled to a remedy, and that remedy is to be made whole, to be placed in the place they would have been but for the violation. There was no showing he went without anything. There were experts that the student could have called to establish there was a denial of faith. There was no factual evidence that that was established. So what I'd like to end with is, again, Timothy O. did not create an exception to the harmless error rule, and frankly, it would be ludicrous to penalize Escondido for the delay in light of the fact it had no negative impact on D.O. And with that, I thank you for your time. Thank you both for your arguments. The matter will stand submitted, and court is in recess. All rise. This court for this session stands adjourned.
judges: BENNETT, SANCHEZ, Foote